# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

**KRYSTAL GREEN, ET AL.**              *CIVIL NO. 2: 10-0364

**VERSUS**                                      *JUDGE TRIMBLE

**PLANTATION OF LOUISIANA, LLC., ET AL.**   *MAGISTRATE JUDGE HILL

## REPORT AND RECOMMENDATION

Before the court for Report and Recommendation is the plaintiffs' Motion to Certify a Collective Action Pursuant to § 216(b) of the Fair Labor Standards Act, and to Approve a Proposed Notification to all Putative Collection Action Class Members.  [rec. doc. 27].  The defendants have filed Opposition to which the plaintiffs have filed a Reply. [rec. docs. 31 and 34].  Oral Argument on the Motion was held and the Motion was taken under advisement.  [rec. doc. 38].

For the following reasons, it is recommended that the plaintiffs' Motion to Certify a Collective Action Pursuant to § 216(b) of the Fair Labor Standards Act, and to Approve a Proposed Notification to all Putative Collection Action Class Members be **GRANTED in part and DENIED in part.**  Accordingly, a class consisting of exotic dancers should be conditionally certified, reserving the plaintiffs' right to request conditional certification of other classes of employees holding other positions after preliminary discovery and further clarification of the pleadings**.**

## BACKGROUND

This case involves claims arising under the Fair Labor Standards Act ("FLSA") and

Louisiana state law.  The plaintiffs are former exotic dancers, waitresses, shot girls, door girls,

bar tenders and bouncers (floormen) of The Plantation Gentlemen's Club ("Plantation Club"),

an establishment which sells alcoholic beverages and provides adult entertainment.  The crux

of the plaintiffs' claims under the FSLA, are the plaintiffs' allegations that The Plantation Club

violated the minimum wage and overtime wage provisions of the FLSA.  [rec. doc. 37, ¶ 69-79,

¶ 80-87 and ¶ 88-95].  The plaintiffs also assert that the defendants violated the FLSA by

requiring an invalid tip pooling or sharing agreement, requiring tips to be split with the

Plantation Club, which is not a co-employee who customarily receives tips, and co-employees

(bartenders and disc jockeys) regardless of the amount of tips received. [1] [rec. doc. 37, ¶ 88-

95].

The lawsuit was filed in a Louisiana state court[2] by Krystal Green, a former exotic

dancer and waitress, on February 12, 2010, individually and on behalf of all others similarly

---

[1]Although unclear, it appears that this claim is related to the tip credit provisions of the FLSA, which under certain conditions allows a tip credit against the employer's minimum wage and overtime compensation obligations. *See* 29 U.S.C. § 203(m).  The FLSA expressly prohibits employers from participating in employee tip pools. "Congress, in crafting the tip credit provision of [Section 203(m) ] of the FLSA, did not create a 'middle ground' allowing an employer both to take the tip credit and share employees' tips." *Rudy v. Consolidated Restuarant Companies, Inc.,* 2010 WL 3565418, *3 (N.D. Tex. 2010) *citing Morgan v. SpeakEasy, LLC*, 625 F.Supp.2d 632, 652 (N.D. Ill. 2007) *quoting Chung v. New Silver Palace Rest., Inc*., 246 F.Supp.2d 220, 230 (S.D. N.Y. 2002). Moreover, "[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.' " *Id. citing Wajcman v. Inv. Corp. of Palm Beach*, 620 F.Supp.2d 1353, 1356 n. 3 (S.D. Fla. 2009) *citing* 29 U.S.C. § 203(m).

[2]The Fourteenth Judicial District Court.

situated, against the Plantation Club, and its alleged owners, Al Dicicco, Jechake, Inc., Golding Enterprises, LLC and Jerry Golding (collectively "Plantation Club").  Thereafter, by Amending Petitions and Complaints, Sarah Manuel (a former shot girl), Rebecca McKinney (a former dancer, shot girl and door girl), Ashley Nicole Spell (a former dancer and waitress), Matt Heinen (a former bartender and bouncer), Ebony Murreld ( a former dancer), Kathleen Becker (a former dancer and shot girl), Ashley Broussard (a former dancer, shot girl and waitress), Abbra Tullos (a former dancer) and Florita Noelle Lee (a former dancer) were added as additional plaintiffs.[3] [rec. docs. 1-2, 17, 21 and 37]. The action was removed to this court on March 4, 2010.

Presently, the plaintiffs move to conditionally certify a collective action under 29 U.S.C. § 216(b) consisting of  "[a]ll individuals, who at any time during the relevant time period, worked as an exotic dancer and/or shot girl and/or other positions at the Plantation Club, but were designated as an independent contractor and, therefore, not paid any wages. Additionally, the putative class includes all individuals, who at any time during the relevant period, were employed as waitresses, bartenders, bouncers and/or other employees who were not paid the legal minimum wage, who were not paid all of their tips collected by the Plantation Club, and/or who worked overtime and were not compensated for their overtime pay to the fullest extent of the law."  [rec. doc. 37, ¶ 59].

---

[3]The plaintiffs job classifications were taken from the affidavits submitted in support of this Motion.  Since oral argument of the instant Motion, plaintiffs have been granted leave to amend to add five more plaintiffs, who are alleged to be former dancers, waitresses, bartenders, door girls and shot girls. [rec. doc. 39-41].

Because the plaintiffs claim that the alleged FLSA violations were willful, the relevant period is alleged to date back three years from the date of filing, February 12, 2007, to the present time.[4] [rec. doc. 37, ¶ 60; rec. doc. 41, ¶ 65.  If granted conditional certification under 29 U.S.C. § 216(b), plaintiffs request that the defendants be required to produce the names and addresses of all potential collective action members, and to allow plaintiffs to send notice to putative class members.  The plaintiffs additionally request that the Plantation Club be prohibited from engaging in any retaliatory activity against those who opt in to this action and from attempting to coerce potential collective action members from not opting in to this action.

It is plaintiffs' position that although they held differing job titles and classifications, their job duties, during the course of any night, overlapped.  Moreover, they allege that some of the plaintiffs worked in a variety of positions during the course of their employment.  They additionally argue that, despite their differing job titles and classifications, they were uniformly subjected to a single or similar set of adverse employment practices, namely, the Plantation Club's failure to pay them the statutorily mandated minimum and/or overtime wages which they claim were due.

Alternatively, they argue that conditional certification should be granted and that the plaintiffs thereafter should be placed in three subclasses based on their job classifications.

---

[4]Their Sixth Amending and Supplemental Complaint, the plaintiffs allege that during the relevant period over three hundred women worked as exotic dancers and shot girls, that over one hundred men and women worked as bouncers, bartenders and waitresses, and that numerous others have worked other jobs at the Plantation Club. [rec. doc. 41, ¶ 27].  During oral argument, defense counsel advised that during the relevant time period, the Plantation Club employed three to four hundred different persons.

Plaintiffs argue that these three subclasses be defined by the manner in which each job classification was compensated, that is, no wages, wages plus tips and wages only.[5]

With regard to the challenged employment practices, plaintiffs make four general allegations. First, that the exotic dancers and shot girls were mis-classified as independent contractors as opposed to employees, and, as such, were not paid the statutory minimum wage required by the FLSA.[6] Second, that the Plantation Club failed to pay its other employees the full statutory minimum wage.[7]  Third, that the Plantation Club failed to pay the exotic dancers, shot girls and its other employees overtime wages.[8]  Fourth, that the exotic dancers were required to pay a portion of their tips to the Plantation Club and that the exotic dancers and waitresses were required to pay a set amount of their tips each night to bartenders and the disc jockey, and bartenders, respectively, regardless of the amount of tips they earned.[9]

The Plantation Club denies the plaintiffs' allegations and opposes collective action certification under 29 U.S.C. § 216(b).  It is the Plantation Club's primary position that the

---

[5]Plaintiffs propose the following subclasses: Subclass 1 –  dancers and shot girls (paid no wages and tips unlawfully split, overtime claimed and wages owed); Subclass 2 –  waitresses, bartenders and door girls (not paid full minimum wage and tips unlawfully split, overtime claimed and wages owed; Subclass 3 –  bouncers (floormen) (overtime claimed and wages owed).

[6]*See* rec. doc. 37, ¶ ¶ 27, 29, 74, 77; rec. doc. 41, ¶ 32, 34, 79, 82.

[7]*See* rec. doc. 37 and 41, Count I.

[8]*See* rec. doc. 37 and 41, Count II.

[9]*See* rec. doc. 37,Count III,  ¶ 89-93; rec. doc. 41, Count III, ¶ 94-98.
The plaintiffs additionally allege that The Plantation Club failed to properly maintain records required by the FLSA (Count IV), as well as unjust enrichment/Quantum Meruit (Count V), intentional tortious conduct of conversion (Count VI), unlawful untimely and failure to pay credit card tips (Count VII)  and retaliatory and constructive discharge (Count VIII). In their Sixth Amended Complaint, plaintiff's further allege that the defendants failed to give them proper notice of the tip credit provisions of the FLSA. [ rec. doc. 41, Count IX].

plaintiffs are not "similarly situated" for purposes of maintaining a collective action. More specifically, the Plantation Club claims that the different job classifications held by the plaintiffs (exotic dancer, shot girl, waitress, door girl, bartender and bouncer) encompass a broad spectrum of dissimilar duties and responsibilities, and that each type of job classification was subject to differences in compensation and work schedules.  More specifically, the Plantation Club asserts that the exotic dancers earned compensation from customers in accordance with the provisions of their Entertainer Performance Leases, which, in essence, made them independent contractors who paid rent for use of the premises, that waitresses[10], shot girls[11], door girls[12] and bartenders were paid differing hourly wages plus tips, and that bouncers (floor men) were paid an hourly wage only.[13]  Moreover, the Plantation Club asserts that the plaintiffs were not subject to a single common policy or practice, and denies the plaintiffs' allegations that any such unlawful employment policy or practices existed.  Finally, the Plantation Club argues that the plaintiffs' claims are highly individualized, require case-by-case analysis, and are thus inappropriate for a collective action.[14]

---

[10]In her capacity as a waitress, by affidavit, plaintiff Broussard, unlike the other alleged waitresses Spell and Green, contends that she was not paid any hourly wage.

[11]In their capacity as shot girls, by affidavit, plaintiffs Manual, McKinney, Becker and Broussard, contend that they were not paid any hourly wage.

[12]In her capacity as a door girl, by affidavit, plaintiff McKinney, the sole door girl, does not state how she was compensated.

[13]See Affidavit of Jason Holloway, ¶¶ 10-13, 18, 39-40, 45-46, 48, 50-51, 55-57.

[14]The Plantation Club also argues that not all plaintiffs have claims against all defendants, that the presence of ancillary claims renders certification improper, that the plaintiffs are not adequate representatives, that bartender/bouncer plaintiff Heinen has no viable claim because he did not work within the three year FLSA limitation period, and that there has been no showing of other potential class action members who wish to opt in.

## LAW AND ANALYSIS

### Legal Standard

The Fair Labor Standards Act sets a general minimum wage for employees engaged in commerce. 29 U.S.C. § 206(a)(1). Section 207(a) requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a).  The FLSA also provides for a tip credit against the employers' minimum wage and overtime compensation obligations; however, this credit is allowed only if the employee has been informed of the provision and all tips received by the employee have been retained by the employee.  The tip credit rules do not prohibit the pooling of tips "among employees who customarily and regularly receive tips."  29 U.S.C. § 203(m). The FLSA creates a cause of action for violations of provisions of the Act, which include the minimum wage and overtime provisions. 29 U.S.C. § 216(b).

Section 216(b) of the FLSA permits a plaintiff to maintain such an action on "behalf of himself . . . and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).  A collective action affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482 (1989).

Unlike class actions brought under Fed. R. Civ. P. 23, a collective action under the FLSA provides an "opt-in", rather than an "opt-out" procedure for potential plaintiffs. *Mooney v. Aramco Services*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).  District courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) in FLSA actions by facilitating notice to potential plaintiffs.  *Hoffman-La Roche, Inc.*, 493 U.S. at 169-170.

Two requirements must be met to maintain a collective action under the FLSA. *Whitworth v. Chiles Offshore Corp.*, 1992 WL 235907, *1 (E.D. La. 1992).  First, the named representatives and the members of the prospective FLSA class must be similarly situated.  *Id*. There must be "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Id.*; *England v. New Century Financial Corp.*, 370 F.Supp.2d 504, 508 (M.D. La. 2005). Second, the action at issue must be one of general effect.  *Whitworth*, 1992 WL 235907 at *1.  Accordingly, courts have held that a court may deny a plaintiff's right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any general applicable rule, policy or practice.  *Id. citing Burt v. Manville Sales, Corp*, 116 F.R.D. 276, 277 (D. Colo. 1987); *Basco v. Wal-Mart Stores Inc.*, 2004 WL 1497709 at *5 (E.D. La. 2004).

Plaintiffs bear the burden of establishing that they are "similarly situated" to the proposed class. *Basco,* 2004 WL 1497709 at *5 *citing Pfohl v. Farmers Ins. Group*, 2004 WL 554834 (C.D. Cal. 2004) and *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1313 (M.D. Ala.

8

2002).   The FLSA does not define the term "similarly situated" such that collective

adjudication of their claims is appropriate.   However, under the jurisprudence, "[w]hether

employees are 'similarly situated' is determined in reference to their 'job requirements and with

regard to their pay provisions.'"   *Xavier v. Belfor USA Group, Inc*., 585 F.Supp.2d 873, 877

(E.D. La. 2008)*; Lima v. International Catastrophe Solutions, Inc*., 493 F.Supp.2d 793, 799

(E.D. La. 2007) *quoting  Dybach v. Florida Dep't of Corr.,* 942 F.2d 1562, 1567-68 (11th

Cir.1991); *Lentz v. Spanky's Restuarant II, Inc.,* 491 F.Supp.2d 663, 669 (N.D. Tex. 2007);

*Eggelston v. Sawyer Sportsbar, Inc*., 2010 WL 2639897, *3 (S.D. Tex. 2010) (noting that "a

minimal showing that all members of the class are similarly situated in terms of job

requirements and pay practice" is required).

Courts have held that "similarly situated" does not mean identically situated.  *Basco,*

2004 WL 1497709 at *5 *citing Crain v. Helmerich and Payne Intern'l Drilling Co.*, 1992 WL

91946, *2 (E.D. La. 1992); *Heagney v. European American Bank*, 122 F.R.D. 125, 127 (E.D.

N.Y. 1988).  Thus, "[s]light differences in job duties or functions do not run afoul of the

similarly situated requirement."  *Tolentino v. C&J Spec-Rent Services, Inc*., __  F.Supp.2d __,

2010 WL 2196261, * 7 (S.D. Tex. 2010).  However, "if the job duties among potential

members of the class vary significantly, then class certification should not be granted."

*Tolentino,* 2010 WL 2196261 at *7 *citing Dreyer v. Baker Hughes Oilfield Operations, Inc*.,

2008 WL 5204149, at *2 (S.D. Tex. 2008); *Harris v. Fee Transportation Services, Inc*., 2006

WL 1994586, *5 (N.D. Tex. 2006).

Likewise, if the named plaintiffs and potential class members are compensated differently, class certification is not appropriate. *See Lentz*, 491 F.Supp.2d at 669; *Sheffield v. Orius Corp*., 211 F.R.D. 411, 413 (D. Or. 2002) (collective action certification denied based on the fact that the potential plaintiffs held different job titles, with different payment structures – piece-rate, hourly and salary).

Courts have utilized two methods for determining whether plaintiffs are similarly situated such that a collective action should be certified, the "two-step" method developed in *Lusardi v. Xerox Corp*., 118 F.R.D. 351 (D. N.J. 1987), and the "spurious class action" procedure employed by the district court in *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990).[15]  *Mooney*, 54 F.3d at 1213-1215.  The Fifth Circuit has expressly refused to endorse either method over the other.  *Mooney*, 54 F.3d at 1216.

However, the prevailing method seems to be the "two-step" approach.  *Lang v. Direct T.V., Inc*., __ F.Supp.2d __, 2010 WL 3211081 (E.D. La. 2010) *citing Johnson v. Big Lots Stores, Inc*., 561 F.Supp.2d 567, 569 (E.D. La. 2008) (conditional certification is the majority approach); *Basco*, 2004 WL 1497709 at *4 ("the two-step *ad hoc* approach is the preferred method for making the similarly situated analysis");  *England*, 370 F.Supp.2d at 509 (noting that the two step approach "has been embraced more often in the Fifth Circuit than the spurious class action" approach).

---

[15]The "spurious class action" procedure, derives from the "spurious" class action procedure previously eliminated from Fed. R. Civ. P. 23.  *Moone*y, 54 F.3d at 1214. Under this approach, the court considers factors similar to those considered in Rule 23(c) cases, that is,  "numerosity," "commonality," "typicality," and "adequacy of representation," to determine whether a class should be certified.  *Id*. Neither party argues that this procedure should be applied.

This method is consistent with the Fifth Circuit's conclusion in *LaChapelle v. Owens-Illinois, Inc.* that "[t]here is a fundamental, irreconcilable difference between the class action described by [FRCP] Rule 23 and that provided for by FLSA § 16(b) [29 U.S.C. § 216(b) ]," namely the "opt out" procedure for class members under Rule 23 as contrasted with the "opt in" procedure under § 216(b). *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975); *see also Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The statutory framework of enforcement procedures of the FLSA and those of Title VII are crucially different, but this difference highlights even more why Rule 23 is not needed in FLSA suits. The FLSA procedure, in effect, constitutes a congressionally developed alternative to the F.R. Civ. P. 23 procedures."). Finally, the Fifth Circuit has recently referred to the two step approach as the "typical [ ]" manner in which collective actions proceed. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n. 2 (5th Cir. 2008). Based on the above, the undersigned finds that the "two-step"method is the preferred method in the Fifth Circuit for the analysis and will be used by this Court.[16]

The "two step" method lends itself to *ad hoc* analysis on a case-by-case basis. *Mooney*, 54 F.3d at 1213. Under the "two step" method, the court analyzes the "similarly situated" inquiry using a two-step analysis. In the first step, the "notice stage," the court determines whether notice should be given to potential members of the collective action, "usually based only on the pleadings and any affidavits." *Mooney*, 54 F.3d at 1213-1214. Because the court

---

[16]As noted in footnote 15, *supra.*, neither party argues that the "spurious class action" procedure should be applied in this case.

has little evidence at this stage, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id*. at 1214.

If the Court grants conditional certification, notice to prospective claimants is issued, and the case proceeds as a collective action through discovery. *Id*. In the second step, generally done on the defendant's motion to decertify the conditional class filed after discovery is largely complete, the court considers, with the benefit of considerably more information, whether the employees are similarly situated. *Id*. If the court decides that a collective class action is inappropriate, then it dismisses the opt-in plaintiffs and the case proceeds on the named plaintiffs' individual claims only. *Id.*

When considering whether to conditionally certify a collective action, the court has a responsibility to refrain from stirring up unwarranted litigation. *H&R Block v. Housden,* 186 F.R.D. 399, 401 (E.D. Tex. 1999) *citing D'Anna v. M/A-COM, Inc*., 903 F.Supp. 889, 894 (D. Md. 1995); *Xavier*, 585 F.Supp.2d at 878. This is so because "employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expenses." *Id*. *quoting D'Anna*, 903 F.Supp. at 894; *Xavier*, 585 F.Supp.2d at 877.

On the other hand, a collective action can be an effective mechanism for resolving common issues in one consolidated action. *See Hoffmann-La Roche*, 493 U.S. at 170. Thus, courts have endorsed the sending of notice early in the proceeding as a means of facilitating the FSLA's broad remedial purpose and promoting efficient case management. *See Realite v. Ark Restuarants Corp*., 7 F.Supp.2d 303, 306 (S.D. N.Y. 1998) (and cases cited therein).

12

However, "an action dominated by issues particular to individual plaintiffs cannot be administered efficiently because individual issues predominate over collective concerns." *Sheffield*, 211 F.R.D. at 413. Therefore, "courts must strive to balance the efficiency of aggregating claims in one action against the expense and inconvenience of frivolous litigation." *Sims v. Housing Authority City of El Paso*, 2010 WL 2900429, *2 (W.D. Tex. 2010).

At the "notice stage", the grant of conditional certification requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan . . . ." *Mooney*, 54 F.3d at  at 1214 n. 8 *citing Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. at 407. Moreover, "there must be a showing of some identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency." *Tolentino*, 2010 WL 2196261 at *3; *Basco*, 2004 WL 1497709 at *5 *citing Barron v. Henry County School System*, 242 F.Supp.2d 1096 (M.D. Ala. 2003) and *Sheffield*, 211 F.R.D. at 416; *Xavier*, 585 F.Supp.2d at 877; *England*, 370 F.Supp.2d at 508.

The plaintiff also bears the burden of making a preliminary factual showing that similarly situated individuals exist. *Lima*, 493 F.Supp.2d at 798. Thus, while the standard at the "notice stage" is lenient, it is by no means automatic. *Id.*; *Xavier*, 585 F.Supp.2d at 878. Indeed, it "would be a waste of the Court's and litigant's time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart, Inc.*, 256 F.Supp.2d 941, 945 (W.D. Ark. 2003).

In this case, the plaintiffs contend that the common policy generally affecting all of the members of the proposed class is the defendants' failure to pay overtime for hours worked in excess of a forty hour work week, and, with respect to some members of the proposed class, a failure to pay the full hourly minimum wage to employees, allegations which the plaintiffs claim are not uniquely personal to any plaintiff or unsuited to a collective action.  To the contrary, the plaintiffs allege that they, and the potential class members, were victims of a company wide policy of not paying statutorily mandated overtime and statutorily mandated minimum wages.

Despite the plaintiffs' allegations that there is a common policy of not paying overtime and minimum wages, it is obvious from the pleadings and affidavits presented to this court that the alleged policies and their effects were neither homogenous, nor lend themselves to collective inquiry, as to all of the former employees as proposed by the plaintiffs.  To the contrary, the alleged policies do not appear to have been uniformly or systematically implemented as to all employees, and it further appears that the effects of the alleged policies will require particularized determinations as to the plaintiffs in each job classification.

However, even if there had been a sufficient showing of a common policy generally affecting all of the members of the proposed class in a sufficiently similar manner, it is clear that in this case there has been an insufficient showing of any identifiable factual or legal nexus that binds the plaintiffs' claims so that hearing the cases together promotes judicial efficiency.

Given the wide array of job duties and pay arrangements between the various jobs held by the plaintiffs, there is little, if any, factual nexus binding the plaintiffs' claims together.

14

Indeed, the only similarity between the plaintiffs appears to be that they all worked for the Plantation Club and that they all claim violations of the FSLA.  However, "[s]imply alleging violations of the law by the same employer is insufficient to justify a collective action." *Harris v. Fee Transportation Services, Inc.*, 2006 WL 1994586, *4 (N.D. Tex. 2006).

Review of the pleadings and affidavits submitted in support and in opposition to the instant Motion shows that the proposed plaintiff class includes persons employed in six different positions at the Plantation Club.  While not addressed in the plaintiffs' affidavits, review of the affidavit of Jason Holloway, submitted by the defendants, reveals that each of the job classifications had significantly dissimilar duties and responsibilities.[17]  When job duties among potential members of the class vary significantly, class certification is inappropriate. *See Harris,* and *Dreyer*; *supra.*

While there may have been some overlap in these duties as the plaintiffs suggest, the vast majority of the duties of each classification were distinct.  For example, one simply cannot plausibly argue that the duties of a bar tender are in any way similar to those of an exotic dancer.  Moreover, the alleged overlap in duties cuts against plaintiffs' argument that collective adjudication will promote judicial efficiency; the extent to which each plaintiff was performing in multiple capacities on any given night will require extensive consideration of individualized issues of both liability and damages, not common to the proposed class.

---

[17] *See* Affidavit of Jason Holloway, ¶ ¶ 11, 39, 45, 48, 50 and 55.

The compensation schemes for the putative class members are equally factually dissimilar. Each of the different job classifications were subject to different compensation schemes.  Most notably, unlike the job classifications held by other purported class members, the exotic dancers earned compensation, not from the Plantation Club, but from customers in accordance with the provisions of their Entertainer Performance Leases.[18]  Pursuant to these written contracts, the dancers paid rent to the Plantation Club, received dance fees from the club's patrons for dancing on stage, in the VIP Room and Champagne Room, and were thus designated independent contractors.[19]

Furthermore, the other putative class member-employees were not uniformly subject to any particular payment scheme.  Some received hourly wage only, while others received an hourly wage plus tips.  Additionally, review of the affidavits submitted by the defendants reveals that the hourly wage of each member-employee, if any, differed, depending on job title and experience.  Most tellingly, the evidence submitted by the plaintiffs suggests that employees within a particular class were not compensated alike.  For example, waitresses Spell and Green contend that they were paid an hourly wage.[20]  However, in her capacity as waitress, by affidavit, plaintiff Broussard contends that she was not paid an hourly wage.[21]

---

[18] *See* Affidavit of Jason Holloway, ¶ 11.

[19] *See Id.*

[20] rec. docs. 27-6, pg. 2, ¶ 9; 27-3, pg. 2, ¶  10.

[21] rec. doc. 27-10, pg. 2, ¶ 5.

16

Furthermore, there is no legal nexus binding the plaintiffs' claims.  Rather, individualized legal determinations specific to each of the plaintiffs' job classifications predominate over collective concerns.  The court's review the hodgepodge of claims and allegations made herein leads to the inescapable conclusion that the legal issues presented are as disparate as the plaintiffs themselves.  Unlike the other purported class members, liability with respect to the exotic dancers will necessarily require a legal determination as to the validity and enforceability of the Entertainer Performance Leases.  This threshold legal inquiry is unique only to the exotic dancer class members.  Courts in this circuit and elsewhere have refused to conditionally certify a class at the first stage of the analysis when a determination of whether certain employees were improperly classified as exempt is required.  *See Harris*, 2006 WL 1994586, at *5 (and cases cited therein).

Moreover, the plaintiffs' claims regarding tips impermissibly paid by exotic dancers to their employer, the Plantation Club, is a wholly separate and distinct legal inquiry from the claim made by the waitresses, who complain that their tips, which could have been permissibly shared with co-employees who customarily receive tips, were improperly shared.

These same reasons lead to the inescapable conclusion that the putative class members are not similarly situated.  The job duties and pay arrangements among potential class members vary significantly; each job classification has distinct duties and responsibilities and each job classification is subject to unique and differing pay practices. Moreover, the pleadings and affidavits submitted to this court suggest that the claims asserted by plaintiffs in each job

17

classification will require extensive consideration of individualized issues of liability and damages, counseling against collective adjudication.  Under similar circumstances, courts in this and other circuits have refused to conditionally certify collective actions.  *See Harris*, *Sheffield, supra*.  Thus, class certification should not be granted as this group of plaintiffs is clearly not similarly situated for purposes of a collective adjudication of their claims.

The case relied on by plaintiffs in support of collective adjudication, *Realite v. Ark Restuarants Corp*., 7 F.Supp.2d 303, 306 (S.D. N.Y. 1998), is distinguishable.  While the class of plaintiffs in *Realite* held a variety of positions at the defendant's restaurants (waiters, porters, dishwashers, cooks, *etc*.), each class member was purportedly an hourly paid non-managerial employee, who was allegedly being paid at a fixed weekly rate, regardless of the number of hours actually worked.  *Id.* at 304 and 307.  Each class member was compensated in accordance with the defendant's challenged uniform fixed rate policy, which was allegedly implemented to avoid payment of minimum wages and overtime.  *Id.*  The defendant's uniform payment of the fixed weekly rate to all class members was thus the common issue to be tried collectively.

That is clearly not the case here.  The plaintiffs in this case were not uniformly compensated in accordance with any set or standardized policy.  To the contrary, each job classification was subject to a differing compensation scheme.  Thus, unlike the liability of the defendant in *Realite*, the defendant's liability here for the alleged violation of the FLSA minimum wage and overtime provisions cannot be determined as a singular common legal issue; an individual and particularized determination will be required for each separate job

classification.  In sum, unlike *Realite*, it is obvious that in this case the alleged policies and their effect on the various putative class members are not homogenous, nor do the policies lend themselves to collective inquiry.

Finally, given the record before this Court, the undersigned finds that it is not appropriate to conditionally certify a collective action dividing the plaintiffs into subclasses. While some courts have indicated that such a procedure may be employed in an appropriate case[22], at this time, the court is unable to partition the class into manageable subclasses.[23]

Review of the affidavits submitted by both the plaintiffs and the defendants reveals no consensus on how the subclasses should be divided.  For instance, plaintiffs assert that the shot girls were not paid any hourly wage, but, rather, were classified as independent contractors, without a written contract to this effect, and that they, therefore, should be grouped with the exotic dancers.  The defendants, on the other hand, assert that shot girls were paid an hourly wage, plus tips[24], and, hence, would likely be grouped with the waitresses, door girls and bartenders.  However, grouping the shot girls with the exotic dancers does not appear inherently more efficient than separate adjudication because the claims of the exotic dancers

---

[22]*See Fravel v. County of Lake*, 2008 WL 2704744, *3 (N.D. Ind. 2008); *Alvarez v. City of Chicago,* 605 F.2d 445, 448-449 (7th Cir. 2010).  *See also Mooney*, 54 F.3d at 1215 (noting the district court's finding that the "[p]laintiffs themselves have made no attempt to identify a smaller group of individuals who might compromise a 'similarly situated' subclass . . . .",  thereby suggesting that such a methodology may be appropriate).

[23]Plaintiffs propose the following subclasses: Subclass 1 –  dancers and shot girls (paid no wages and tips unlawfully split, overtime claimed and wages owed); Subclass 2 –  waitresses, bartenders and door girls (not paid full minimum wage and tips unlawfully split, overtime claimed and wages owed; Subclass 3  –  bouncers (floormen) (overtime claimed and wages owed).

[24]*See* Affidavit of Jason Holloway, ¶ 46.

19

cannot be addressed without first making preliminary determinations regarding the validity and enforceability of their Entertainer Performance Leases.

Additionally, grouping the waitresses, bartenders and door girls in a single subclass, as proposed by plaintiffs, fares no better; the pleadings indicate that those employed as waitresses assert a tip-splitting claim that is not common to either the bartenders or door girls, and, hence, will not lead to more efficient adjudication of the plaintiffs' claims.

Indeed, other than the claims made by the exotic dancer plaintiffs, from the pleadings presently before this court, it is not entirely clear what claims are made by each of the other job classifications held by the plaintiffs. In short, while it may be possible to subdivide the various job classifications into subcategories based on the plaintiffs job classifications, without further discovery and more particularized pleadings as to the specific claims asserted by each class of plaintiffs, the undersigned cannot recommend conditional certification of subclasses of plaintiffs at this time. However, the plaintiff's right to re-urge such consideration in the event that additional facts can be presented to the Court should be reserved.

**Limited Conditional Class Certification**

Notwithstanding the foregoing, under the lenient standard applicable at this stage of the proceedings, the plaintiffs have shown that notice of a collective action is warranted with respect to the class of exotic dancers. As in the class-action context, this court has the power to modify an FLSA collective action definition on its own. *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 5204149, *3 (S.D. Tex. 2008) *citing Baldridge v. SBC Commc'ns,*

*Inc.*, 404 F.3d 930, 931-32 (5th Cir. 2005) (noting the court's power to "limit the scope" of a proposed FLSA collective action).

The exotic dancer plaintiffs have sufficiently alleged that they were, together, the victims of a common policy or plan of the Plantation Club.  All dancers claim to have been mis-classified as independent contractors in their Entertainer Performance Leases in order to avoid the payment of statutorily mandated overtime and statutorily mandated minimum wages. In other words, the exotic dancer plaintiffs allege that they, were victims of a company wide policy of contractual mis-classification by the Plantation Club.  Mis-classification as an independent contractor has been found, by several courts, to be a sufficient common policy or plan for conditional certification purposes. *See Houston v. URS Corporation,* 591 F.Supp.2d 827, 834 (E.D. Va. 2008) ("Plaintiffs have sufficiently alleged a "common policy or plan" in that all inspectors were classified as independent contractors rather than employees, that all inspectors were compensated in a similar manner on a "per inspection" basis, and that all inspectors were required to conduct inspections in accordance with FEMA guidelines") *citing Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198 (S.D. N.Y. 2006) (recognizing that "common policy or plan" may include the mis-classification of employees as independent contractors) and *Montoya v. S.C.C.P. Painting Contractors, Inc.,* 2008 WL 554114, *3 (D. Md. 2008) (noting that "the potential mis-classification of the plaintiffs [as independent contractors], in violation of FLSA's mandate that 'employee' be interpreted broadly, could be enough for class certification.");*Westfall v. Kendle*, 2007 WL 486606, at *9-10 (N.D. W.Va. 2007) (holding that

21

allegations of mis-classification of employees as independent contractors was sufficient to meet the similarly situated requirement, despite the defendant's argument that the court needed to examine each worker-employer relationship independently). *See also Prater v. Commerce Equities Management Company, Inc.,* 2007 WL 4146714, *7 (S.D. Tex. 2007) ("Collective-action treatment is proper for mis-classification claims when the employees have essentially the same basic job responsibilities.") *citing Holbrook v. Smith & Hawkwn, Ltd.,* 246 F.R.D. 103, ( D. Conn. 2007) ("[The plaintiff] contends that all [Assistant Store Managers] maintained the same basic job responsibilities and were all classified as exempt . . . but that ASMs basic job responsibilities could not have qualified them as exempt executives under the statute. Such commonality in position, classification, and treatment . . . constitutes a common scheme or plan that renders all ASMs similarly situated for FLSA purposes.").

The exotic dancers are "similarly situated" in that they were all allegedly contractually mis-classified as independent contractors rather than employees, they were all compensated in a similar manner pursuant to the terms of their Entertainer Performance Leases, and they all performed substantially the same job duties and had substantially the same responsibilities.

In their Complaint, the exotic dancers allege that, "as a matter of common business policy",  they were all mis-classified as independent contractors rather than employees, to deny them their rights under the FLSA.[25]  The Entertainer Performance Leases contained in the

---

[25]rec. doc. 41, ¶ 32, 79, 82, 88.

record supports a finding that this alleged policy existed; the Leases purport to contractually classify the exotic dancers as independent contractors.[26]

Moreover, these Entertainer Performance Leases demonstrate that the exotic dancers were compensated in the same manner – they received no compensation from the Plantation Club, but instead earned dance fees from the club's patrons, a fact which the Plantation Club does not contest.[27] Thus, it is clear that the alleged policy affected each exotic dancer in a similar way, to wit, the alleged mis-classification resulted in the non-payment of minimum or overtime wages.

Finally, review of the allegations in the plaintiffs' Complaint, Amended Complaints and the affidavit submitted by Jason Holloway confirms that the exotic dancer plaintiffs performed substantially the same job duties and had substantially the same responsibilities. The exotic dancers danced for patrons on stage, in the VIP Room and in the Champagne Room, and, when not dancing, mingled with patrons on the floor, performing "table dances."[28]

The Plantation Club argues that conditional certification is not appropriate because the court will have to make a "unique and individualized analysis of [each dancer's] contract and . . . contractor status."  Stated differently, the Plantation Club asserts that a highly

---

[26]*See* Affidavit of Jason Holloway, Ex. 1.

[27]*See* Affidavit of Jason Holloway, ¶ 11 and Ex. 1.

[28]*See* Affidavit of Jason Holloway, ¶ 11, rec. doc. 41, ¶¶ 42, 44.

individualized factual analysis for each dancer will be required to determine whether she was an FLSA employee or independent contractor, including an analysis of each dancer's independence, opportunity for profit and loss, investment, relationship, duration and skill.  The Plantation Club's argument ignores the evidence in the record which supports collective adjudication.

The Entertainer Performance Leases contained in the record demonstrate that the Leases contain substantially the same provisions in each. Hence, judicial efficiency will be promoted though collective adjudication of the legal issues associated therewith.

Furthermore, the current record does not demonstrate that the factual issues raised by the Plantation Club should preclude collective action.  Plaintiff's Complaint and Amended Complaints allege that each exotic dancer was not in business for herself or truly independent in that each dancer lacked control over her own or the Plantation Club's business, did not exercise the skill or initiative of a person in business for herself, made only minor investments compared to those made by the Plantation Club, did not control key determinations for profit and loss and were integral part of the Plantation Club's business and essential to its success.[29]

These allegations are supported by the exotic dancer plaintiffs' affidavits in which each exotic dancer claims to have been subject to substantially the same degree of control by The Plantation Club in the following aspects of their work: work hours, stage and dance

---

[29]rec. doc. 41, ¶ 38-59.

performance times, customer volume, club atmosphere, conduct, shift performances, dance

sequences, dance fees, and dance calculations, as well as having been required to sign in and

out on each shift, and been subject to punishment for arriving late for, or leaving early from, a

shift.[30]  Thus, plaintiffs allege that they were wrongly treated in the same way; hence, such

allegations may be subject to common proof.  This is particularly true, given that the record

evidence establishes that the exotic dancers' job duties and responsibilities did not vary in any

significant aspect and they were all were compensated in the same manner.

     The undersigned notes that the exotic dancers' allegations are countered by the affidavit

of Jason Holloway.[31]  Thus, while the Plantation Club may ultimately prove correct, and

individual issues may, in the end, render a collective action inappropriate, the undersigned

finds, as have other courts, that consideration of these factual issues is more appropriately

raised on a motion to decertify the collective action once discovery has been conducted.  *See*

*Houston*, 591 F.Supp.2d at 834-835; *Westfall*, 2007 WL 486606, at *9; *Montoya,* 2008 WL

554114, at *3 fn 4; *Johnson v. Big Lots Stores, Inc.*, No. 2:04-cv-3201, rec. doc. 36 (E.D. La.

2005) *citing Pendlebury v. Starbucks Coffee Co.,* 2005 WL 84500, *3 (S.D. Fla. 2005); *see*

*also Indergit v. Rite Aid Corp.*, 2010 WL 2465488, * 9-10 (S.D. N.Y. 2010); *Prater*, 2007 WL

4146714 at *7; *Dreyer*, 2008 WL 5204149 at *4 (noting that the determination as to whether an

---

[30]*See* Affidavits of Krystal Green, Rebecca McKinney, Ashley Nicole Spell, Ebony Murreld, Kathleen Becker, Ashley Broussard, and Abbra Tullos at ¶ 6, respectively.

[31]*See* Affidavit of Jason Holloway, ¶11.

exemption from the applicability of the FLSA applies is a merit based defense which cannot defeat conditional certification).

In sum, on the basis of the present record, under the lenient standard that applies at this stage of the proceeding, the court cannot conclude that the Plantation Club's assertion defeats conditional certification of an exotic dancer class, particularly when the plaintiffs have had no opportunity to depose Jason Holloway or to obtain discovery from the Plantation Club.

Finally, from the record presently before this court, eight of the named plaintiffs are alleged to have been former exotic dancers.  Moreover, the plaintiffs allege in their Sixth Amending and Supplemental Complaint that over three hundred women worked as exotic dancers and shot girls during the relevant time period.[32]  The plaintiffs have thus demonstrated that similarly situated individuals exist.

Although the defendants assert that the plaintiffs' failure to offer additional evidence from potential class members who desire to opt-in is fatal to conditional certification, several courts have found that such evidence is not essential for conditional certification.  *See Dreyer*, 2008 WL 5204149 at *3 *citing Heckler v. DK Funding*, LLC, 502 F.Supp.2d 777, 780 (N.D. Ill. 2007) and *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002); *See also Johnson v. Big Lots Stores, Inc.*, No. 2:04-cv-3201, rec. doc. 36 (E.D. La. 2005) *citing Neagley v. Atascosa County*, 2005 WL 354085, *3 (W.D. Tex. 2005) (stating that although affidavits of

---

[32]rec. doc. 41, ¶ 27.

other similarly situated employees "would help make the initial determination of a collective

action easier, the Court does not believe that it is required") and *Taillon v. Kohler Rental

Power, Inc.*, 2003 WL 2006593, *3 (N.D. Ill. 2003) (holding that there is no "independent

requirement of proof of desire to join in the action for authorization of notice under § 216(b)).

Moreover, even if the plaintiffs were required to provide such evidence, the plaintiffs have

effectively done so here.  Since Krystal Green filed this lawsuit, seven former exotic dancers

have joined the lawsuit as additional named plaintiffs.

**Notice**

Because the plaintiffs have made the requisite showing for conditional certification of

an exotic dancer class, given the number of potential class members and the limited

information available to the plaintiffs, the undersigned finds that this case presents an

appropriate situation for the Court to involve itself in the notice process.  *See Hoffmann-La

Roche, Inc.*, 493 U.S. at 169.

The plaintiffs have requested that this Court approve their proposed Notice and Consent

forms attached to the Motion, to which The Plantation Club has raised several objections.

During oral argument, the undersigned informed the parties that in the event conditional

certification was granted, the form and content of the notice would be addressed by

consultation between the undersigned and the parties.  The parties did not object to this

procedure.  Indeed, after conditional certification is granted, courts often instruct the parties to

confer and submit a joint proposed notice to the court for approval.  *See Suarez v. S&A*

*Painting and Renovation Corp.*, 2008 WL 5054201, *3 (E.D. N.Y. 2008);  *Davis v. Abercrombie & Fitch Co.*, 2008 WL 4702840, * 12 (S.D. N.Y. 2008); *Frederick v. Dreiser Loop Supermarket Corp.*, 2008 WL 4724721, *2  (N.D. N.Y. 2008); *Chowdhury v. Duane Reade, Inc.*, 2007 WL 2873929, *6 (S.D. N.Y. 2007).

Accordingly, in the event that this Report and Recommendation is adopted by Judge Trimble, within ten days of Judge Trimble's Ruling, the parties shall contact the offices of the undersigned to schedule a status conference.

**Request for Production**

That plaintiffs have also requested that this Court order production of the names and addresses of all potential collective action members.  At this time, the plaintiffs' request is premature.  The Plantation Club is advised, however, that in the event that this Report and Recommendation is adopted by Judge Trimble, it will be directed to provide the plaintiffs with the names and addresses of those persons eligible to join the collective action, and that the time for making production will be limited.  Accordingly, the Plantation Club may wish to begin efforts to obtain this information prior to final Ruling by this Court.

**Request for Protective Order**

Finally, the plaintiffs request that The Plantation Club be prohibited from engaging in any retaliatory activity against those who opt in to this action and from attempting to coerce potential collective action members from not opting in to this action.  This request will be discussed at the status conference with the Court, in the event that Judge Trimble adopts the

recommendation made herein.

## CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the plaintiffs' Motion to Certify a Collective Action Pursuant to § 216(b) of the Fair Labor Standards Act, and to Approve a Proposed Notification to all Putative Collection Action Class Members be **GRANTED in part and DENIED in part.**  Accordingly, a class consisting of exotic dancers should be conditionally certified, reserving the plaintiffs' right to request conditional certification of other classes of employees holding other positions after preliminary discovery and further clarification of the pleadings.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by F.R.C.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *Douglass v. United Services Automobile Association*, 79 F.3d. 1415 (5th Cir. 1996).

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed this 24th day of October, 2010, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

29