UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

KRYSTAL GREEN, ET AL.                *CIVIL NO. 2: 10-0364

VERSUS                               *JUDGE TRIMBLE

PLANTATION OF LOUISIANA, LLC., ET AL.   *MAGISTRATE JUDGE HILL

REPORT AND RECOMMENDATION

Before the court for Report and Recommendation is the defendants' Motion to Compel Arbitration. [rec. doc. 138]. The plaintiffs have filed Opposition to which the defendants have filed a Reply. [rec. docs. 142 and 145]. Oral Argument on the Motion was held and the Motion was taken under advisement. [rec. doc. 148].

For the following reasons, it is recommended that the defendants' Motion to Compel Arbitration be **GRANTED.**

BACKGROUND

This purported class action lawsuit was filed in Louisiana state court[1] by Krystal Green, a former exotic dancer and waitress, on February 12, 2010, individually and on behalf of all others similarly situated, against The Plantation Gentleman's Club ("the Club"), and its alleged owners, Al Dicicco, Jechake, Inc., Golding Enterprises, LLC and Jerry Golding (collectively "the defendants"). In her original Petition, Green asserted claims arising under the Fair Labor Standards Act ("FLSA") and Louisiana state law. The action was removed to this court on March 4, 2010.

---

[1] The Fourteenth Judicial District Court.

Florita Noelle Lee ("Lee") (a former dancer) was added as an additional plaintiff by Fifth Amending and Supplemental Complaint filed on August 16, 2010. [rec. doc. 37]. Autumn Whatley ("Whatley") (a former bartender, shot girl and exotic dancer) and Christine Killinger ("Killinger") (a former door girl, waitress and exotic dancer) were added as additional plaintiffs by Sixth Amending and Supplemental Complaint filed on September 22, 2010.[2] [rec. doc. 41].

On December 15, 2010, the Court conditionally certified a collective action class consisting of exotic dancers under 29 U.S.C. § 216(b) of the FLSA. [rec. doc. 52]. Thereafter, Megan Beard ("Beard"), Selena Istre ("Istre") and LaTonya Waters ("Waters") opted-in to the collective action. [rec. doc. 95].

The plaintiffs' Motion to Certify a Class Action pursuant to Fed. R. Civ. P. 23 has been filed. [rec. doc. 133]. The Motion to Certify is set for consideration with oral argument on October 31, 2012. [rec. doc. 137].

## LAW AND ANALYSIS

By this Motion, the defendants seek a court order requiring six of the collective action and purported class action members (Lee, Whatley, Killinger, Beard, Istre and Waters) to arbitrate their claims, pursuant to agreements signed after the institution of the instant class action lawsuit, and before they were added as additional plaintiffs or opted-in to the collective

---

[2]These job descriptions are found in the plaintiffs' Fifth and Sixth Amending and Supplemental Complaints.

action.  Lee, Killinger, Beard, Istre and Waters signed documents entitled "Agreement to Mediate and Arbitrate Business Disputes" on May 6, 2010,  May 2, 2010, May 7, 2010, May 27, 2010 and May 6, 2010, respectively.  Whatley and Beard signed documents entitled "Agreement to Mediate and Arbitrate Employment Disputes" on May 3, 2010 and May 2, 2010, respectively.

It is undisputed that these Agreements contain both an arbitration clause, whereby employment claims, disputes and controversies are to be resolved by binding arbitration, and delegation clauses, whereby the resolution of arbitrability issues, as well as challenges to the enforceability of the Agreements is delegated to the arbitrator.[3]  It is further undisputed that

---

[3] The "Agreement to Mediate and Arbitrate Business Disputes" signed by Lee, Killinger, Beard, Istre and Waters provides in pertinent part as follows:

> 1.  Company and Entertainer agree that any and all claims, disputes, or controversies by or among the Company or any of its employees, on the one hand, and Entertainer on the other hand, . . . whether brought individually or with others shall be submitted to mediation . . . If mediation fails to resolve the claim, dispute, or controversy, the claim, dispute or controversy shall be resolved by binding arbitration . . . . administered by the expedited commercial rules of either the APAM or the American Arbitration Association . . . .
>
> 2.  The arbitrators shall determine the arbitrability of the claims, disputes, and controversies.  The parties will abide by and perform any decision rendered by APAM or AAA . . . .
>
> 3.  **By executing this agreement the parties give up their rights to litigate in court any and all claims, disputes and controversies between them** . . . .
>
>        \*          \*          \*
>
> 7.  In the event this agreement or any provision of this agreement is challenged as unenforceable, the arbitrator shall decide that issue . . . .

The "Agreement to Mediate and Arbitrate Employment Disputes" signed by Whatley and Beard provides in pertinent part as follows:

> [The Company and employee] agree that any and all claims, disputes, or controversies by or among the Company, the Employee and/or any other employee of the Company . . . whether brought individually or with others shall be submitted to mediation . . . If

sixty persons who worked at the Club, including Lee, Whatley, Killinger, Beard, Istre and Waters signed these Agreements between April 2010 and May 2010. [rec. doc. 47-1, Exhibit A, ¶ 9]. However, the instant Motion is directed solely at Lee, Whatley, Killinger, Beard, Istre and Waters.[4]

Plaintiffs oppose the instant Motion arguing that the Agreements, signed after the filing of the Original Petition, circumvent this Court's authority to oversee and manage the pending class and collective action, over which this court is exercising jurisdiction.[5] This practice, the plaintiffs argue, constitutes improper conduct which is against public policy.

> mediation fails to resolve the claim, dispute, or controversy, the claim, dispute, or controversy shall be resolved by binding arbitration . . . .administered by either (I) APAM pursuant to the APAM expedited employment rules . . . or (ii) the expedited commercial rules of the American Arbitration Association . . . .
>
> The arbitrators shall determine the arbitrability of the claims, disputes, and controversies. The parties will abide by and perform any decision rendered by APAM or AAA . . . .
>
> **By executing this agreement the parties give up their rights to litigate in court any and all claims, disputes and controversies between them** . . . .
> \*      \*      \*
> In the event this agreement or any provision of this agreement is challenged as unenforceable, the arbitrator shall decide that issue . . . .

The Agreements further provide that they will be governed by the Federal Arbitration Act ("FAA").

[4]Plaintiffs counsel has noted in his Opposition that Waters has requested that she not be included in the group, but that he has been unable to confirm that request. [*See* rec. doc. 142, pg. 1 fn. 1].

[5]During oral argument, plaintiffs' counsel candidly acknowledged that he has not asserted duress, vitiation of consent or fraud in opposition to the instant Motion because, under *Rent-a-Center West, Inc., v. Jackson*, 130 S.Ct. 2772 (2010), any argument based on duress, vitiation of consent or fraud must be determined by the arbitrator, given that the Agreements at issue in this case contain delegation clauses, which delegate resolution of arbitrability and enforcement issues to the arbitrator. Accordingly, because any challenge by the plaintiffs based on duress, vitiation of consent or fraud is directed at the validity of the contract as a whole, *under Rent-a-Center West*, this Court must treat the Agreements as valid under § 2 of the FAA and enforce the Agreements under § § 3 and 4 of the FAA, leaving any such challenge to the arbitration agreement as a whole for the arbitrator. *Id.* 130 S.Ct. at 2779.

In support of their argument, plaintiffs note the differences between collective actions under § 216(b) and Rule 23, the former requiring each purported member to opt-in to the lawsuit and the latter requiring each purported member to opt-out of the lawsuit. *See Mooney v. Aramco Services*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). They argue that it was improper for the defendants to obtain arbitration agreements from the purported class action members, who, by virtue of the filing of the class action petition, were already subject to this Court's jurisdiction, without this Court having first had an opportunity to certify the proposed class, or provide appropriate notice to the putative members, in accordance with the authority granted to this Court under Rule 23(c).

Similarly, the plaintiffs argue that it was improper for the defendants to circumvent the Court's orderly conduct of the collective action litigation by obtaining arbitration agreements from potential collective action plaintiffs before this Court had an opportunity to conditionally certify a collective action and provide appropriate notice to the putative members, in accordance with the authority granted to this court under § 216(b). *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482 (1989).

The defendants counter that, with respect to the collective action, the plaintiffs had not opted-in to the action at the time the agreements were obtained. Hence, there was no usurpation of this Court's authority with respect to these claims. They further assert that, by signing the Arbitration Agreements, the plaintiffs effectively opted-out of the Rule 23 class

action. The defendants assert that there is no authority for treating pre-dispute and post-dispute arbitration agreements differently.

Moreover, they rely on jurisprudence expressing a strong preference for, and favoring, arbitration. *See Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) ("In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration . . . ."); *Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 285 (5th Cir. 2007) *quoting Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (noting that the FAA "establishes a federal policy favoring arbitration.").

Finally, the defendants argue that there is authority which supports their actions, holding that prior to certification, each side has the right to communicate with potential class members. *Kerce v. West Telemarketing Corporation*, 575 F.Supp.2d 1354 (S.D. Ga. 2008); *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

## LAW AND ANALYSIS

Plaintiffs do not strenuously argue that the defendants' actions were improper with respect to the collective action portion of this lawsuit. Under § 216(b), each purported collective action member must opt-in to the lawsuit. *See Mooney*, 54 F.3d at 1212, *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). The Arbitration Agreements at issue in this case were signed before the plaintiffs opted-in to the lawsuit. Hence, as plaintiffs' counsel candidly stated during oral argument, they were not, at that time, "actual plaintiffs." They could, therefore, properly be

approached by their employer without usurping this Court's authority.

The real crux of the plaintiffs' defense to this motion lies with the requested class action in which, if a class is ultimately certified, the plaintiffs will be members.

It is beyond dispute that this Court not only has the authority, but also the duty, to oversee class action litigation, and to enter appropriate orders governing the conduct of counsel and the parties. *See In Re Air Crash Disaster at Florida Everglades,* 549 F.2d 1006, 1012 fn. 8 (5th Cir. 1977) ("In class actions we recognize, indeed insist upon, the court's participation as the manager of the case."); *Gulf Oil Co.,* 452 U.S. at 100. This is so because of the potential for abuse in the class action context. *Gulf Oil,* 452 U.S. at 100. However, this Court's authority is not unlimited; the Court is constrained by Rule 23, and by the Constitution. *Id.* at 99-100.

In the context of a class action, observing the "serious restraints on expression" accompanying an order broadly restraining communication with putative class members prior to class certification, the United States Supreme Court in *Gulf Oil Co. v. Bernard* suggested that each side has the right to communicate with putative class members. *Gulf Oil,* 452 U.S. at 101-104. However, because of the potential for abuse in class-action litigation, the Court found that restrictions limiting communications between parties and potential class members may be imposed upon a "clear record" showing "of the particular abuses by which [the moving party] is threatened." *Id*. at 101-102. The "mere possibility of abuses does not justify the routine adoption of a communications ban. . . ." *Id.* at 104.

Relying on *Gulf Oil*, in the context of a collective action under the FLSA, the Southern District of Georgia refused to strike declarations from putative collective action members obtained prior to conditional certification. Citing *Gulf Oil*, the court held that "prior to a decision on the conditional certification question, each side has the right to communicate with potential class members." *Kerce*, 575 F.Supp.2d at 1366 (citation omitted). In further reliance on *Gulf Oil*, the Court held that before restricting an employer's free speech rights, and its right to defend itself in collective action litigation, the plaintiff must offer "clear record evidence of abusive communications. . . ." *Id.* The undersigned agrees with this reasoning.

In this case, the plaintiffs have submitted no record evidence, much less any clear record evidence, of any abusive communications between the defendants and Killinger, Beard, Istre and Waters in connection with their execution of the Arbitration Agreements. The "mere possibility of abuse[]" does not justify any remedial action by this court. *Gulf Oil,* 452 U.S. at 104.

On the other hand, plaintiffs Whatley and Lee have submitted affidavits in which each state that while in the "back office" of the Club, alone, they were told that if they did not sign the agreement, they would be fired, that they were not permitted to read the document and that they were told the document was proof they worked at the club. [rec. doc. 44-1 and 44-2]. These declarations are countered by the affidavits of former general manager and manager of the Club, who state that the employees were advised of the arbitration agreement in groups of two or three, never alone, that the employees were told to read the agreement and bring it to

their lawyer if they had any questions, and that no threats or intimidation were used to coerce any employee to sign. [rec. doc. 47-1, Exhibits A and B].

While the declarations of Whatley and Lee provide some support for a finding of abuse, given the declarations of the general manager and manager of the Club, the undersigned cannot find that the plaintiffs have presented clear record evidence of abuse for this Court to take any remedial action. This is particularly the case given the strong federal policy favoring arbitration which lends additional support for this result.[6] *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002); *Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 285 (5th Cir. 2007).

This same strong federal policy militates against a finding that the defendants' actions have circumvented this Court's authority to oversee and manage the pending class and collective action, thereby constituting improper conduct which is against public policy. The plaintiffs have cited no jurisprudence in support of their public policy argument and the undersigned's research has disclosed none. In the absence of any jurisprudential support to the contrary, the Court cannot find that its duty to oversee class action litigation overrides this Court's obligation to honor and effectuate the well established national and jurisprudential policy favoring arbitration.

---

[6] Of course Whatley and Lee remain free to assert duress, fraud or any other vice of consent in the arbitration proceeding.

Finally, even if this Court were to give greater weight to the plaintiffs' affidavits, the Court could nevertheless not invalidate the Arbitration agreements on the grounds urged herein. The question as to whether there is a valid agreement to arbitrate is governed by state contract law. *Fleetwood Enterprises, Inc. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir. 2002) *citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995). Thus, generally applicable state-law contract defenses, such as fraud, duress or unconscionability, may invalidate arbitration agreements. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686-687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). Due to the liberal policy in favor of arbitration, the party objecting to arbitration bears the burden to show that the Agreement is invalid. *Truitt v. DirecTV, Inc*., 2008 WL 5054570, *2 (E.D. La. 2008) *citing Walton v. Rose Mobile Homes, LLC*. 298 F.3d 470, 473 (5th Cir. 2002); *Almon v. Higbee, Co.*, 2008 WL 79956, *2 (E.D. La. 2008) *citing Walton,* 298 F.3d at 473.

To the extent that the Whatley and Lee claim the Arbitration Agreement is invalid because they were forced to enter into the Agreement by fraud and coercion while under economic duress (the threat of being terminated), that argument is unpersuasive. Both the Supreme Court and the Fifth Circuit have, on numerous occasions, allowed employers to make mandatory arbitration a condition of employment. *See Almon*, 2008 WL 79956 at *3 *citing Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), *Marino v. Dillards, Inc.*, 413 F.3d 530 (5th Cir. 2005), *Carson v. Higbee Company*, 149 Fed. Appx. 289 (5th Cir. 2005), *May v. Higbee Company*, 372 F.3d 757 (5th Cir. 2004) and *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229 (5th Cir. 1999). To allow Whatley and Lee to prevail on this argument would fly in the face of

Supreme Court and Fifth Circuit precedent, which allows employers to require employees to sign mandatory arbitration agreements in exchange for continued employment.

To the extent that each claims they were fraudulently induced into signing the Arbitration Agreement by the manager or general manager of the Club, who allegedly indicated to them that the document was merely proof that they worked at the Club, that argument is likewise not persuasive. These statements allegedly made by their superiors did not relieve Whatley or Lee of the responsibility to read the Arbitration Agreement, and understand its terms before signing it. *See Almon*, 2008 WL 79956 at *3. It is well settled that an individual who signs a written instrument is presumed to know its contents and cannot avoid its obligations by arguing after the fact that she did not read it, that she did not understand it, or that the other party failed to explain it to her. *See Tweedel v. Brasseaux*, 433 So.2d 133, 137 (La. 1983); *Blount v. Smith Barney Shearson*, 695 So.2d 1001, 103-104 (La. App. 4th Cir. 1997); *Brown v. Simoneaux*, 593 So.2d 939, 941 (La. App. 4th Cir. 1992); *Almon*, 2008 WL 79956 at *3.

To the extent that Whatley and Lee claim they signed the Arbitration Agreement in error or with the mistaken belief that they were not foregoing any right to litigate employment disputes, that claim is unconvincing. "Error can vitiate consent but only 'when it concerns a cause without which the obligation would not have been incurred.'" *Almon*, 2008 WL 79956 at *3 *citing Campo-Wong v. Bond*, 2002 WL 31683549 (E.D. La. 2002) *quoting* La. Civ. Code art. 1949. While they now claim that they did not fully understand the impact of the

11

Arbitration Agreement, the fact remains that they did, indeed, sign the Arbitration Agreement, which states in bold lettering **"By executing this agreement the parties give up their rights to litigate in court any and all claims, disputes and controversies between them. . . . "**

In sum, the Court finds that there are valid agreements to arbitrate between the parties, and that there is no public policy precluding enforcement of the Arbitration Agreements. Furthermore, plaintiffs do not dispute that the claims in question fall within the scope of the Arbitration Agreements. Accordingly, Lee, Whatley, Killinger, Beard, Istre and Waters should be ordered to arbitrate their claims against the defendants.[7]

## CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the defendants' Motion to Compel Arbitration [rec. doc. 138] be **GRANTED.**

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by F.R.C.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

---

[7]The plaintiffs objected to the use of the Association of Professional Arbitrators and Mediators, LLC ("APAM") required by the Arbitration Agreements on grounds that APAM is owned, in part, by former defense counsel Merrick J. Norman. The defendants, however, have stated by Reply and during oral argument that the do not oppose the selection of an independent, non-APAM arbitrator. [*See* rec. doc. 145, pg. 2-3]. Accordingly, the arbitration shall be conducted by a non-APAM arbitrator selected by the parties. If the parties are unable to agree on an arbitrator, upon Motion, the Court will make the selection.

*Douglass v. United Services Automobile Association*, 79 F.3d. 1415 (5th Cir. 1996).

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

September 17, 2012, at Lafayette, Louisiana.

*[signature]*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

G.Roaix
Copy sent: J. Benoit (Trimble)
On: 9-17-2012
By: MBD

13